IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                        Case Nos.:  4:13cr16/MW/CAS
                                                       4:15cv255/MW/CAS

J-SHUN HARRIS,

          Defendant.

---

## <u>REPORT AND RECOMMENDATION</u>

Defendant, J-Shun Harris, hereinafter Mr. Harris, filed an amended

motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C.

§ 2255 (ECF No. 73).  The Government filed a response (ECF No. 75) and

Mr. Harris filed a reply.  (ECF No. 77).  The case was referred to the

undersigned for the issuance of all preliminary orders and any

recommendations to the district court regarding dispositive matters.  *See*

N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P.

72(b).  The court determined that a evidentiary hearing should be held and

counsel was appointed to represent Mr. Harris at the evidentiary hearing.

(ECF No. 78). The court held an evidentiary hearing on January 13, 2016

(*see* ECF Nos. 85, 86), following which the parties submitted supplemental

briefs.  (*See* ECF Nos. 89, 90).  After a careful review of the record and the

arguments presented, the undersigned recommends that Mr. Harris be
permitted to pursue a belated appeal due to counsel's constitutionally
inadequate consultation with his client.

## PROCEDURAL BACKGROUND

Mr. Harris was charged in a three count indictment with possession
with intent to distribute controlled substances (Count One), possession of a
firearm in furtherance of a drug trafficking crime (Count Two) and
possession of a firearm by a convicted felon (Count Three).  (ECF No. 1).
Represented by retained counsel Mutaqee N. Akbar, Esq., hereinafter
Mr. Akbar, hereinafter, Mr. Harris pleaded guilty pursuant to a written plea
agreement and statement of facts.  (ECF Nos. 19–21).

The record contains both a Draft and a Final Presentence
Investigation Report ("PSR") (ECF Nos. 23, 28), and references henceforth
will be to the final PSR.  Counts One and Three were grouped for the
purpose of sentencing calculations, and Mr. Harris' base offense level was
22.  (ECF No. 28, PSR ¶¶ 27, 28).  His adjusted offense level was 30 after
a two-level adjustment pursuant to § 2K2.1(b)(1)(A) due to his possession
of seven firearms, a two-level increase pursuant to

§ 2K2.1(b)(4)(A) because three of the firearms had been reported stolen, and a four-level adjustment pursuant to § 2K2.1(b)(6)(B) because he used or possessed the firearms in connection with another felony offense (the possession of controlled substances).  (ECF No. 28, PSR ¶¶ 29–31, 35). Mr. Harris received credit for acceptance of responsibility, and his total offense level was 27.  (ECF No. 28, PSR ¶¶ 37–39).  He had four criminal history points as a result of convictions for possession of cocaine with intent to sell or deliver and for driving while license suspended or revoked, and therefore a criminal history category of III.  (ECF No. 28, PSR ¶ 51). The applicable advisory guidelines range was 87 to 109 months on Counts One and Three, to be followed by a mandatory consecutive 60 month term on Count Two.  (ECF No. 28, PSR ¶ 95).  There was also a statutory maximum term of 30 years on Count One and a maximum of ten years on Count Three.  (ECF No. 28, PSR ¶ 94).

The defense filed no objections to the PSR.  At sentencing, Mr. Harris agreed that there were no objections that he had expected to be filed.  (ECF No. 44 at 5–6).  Counsel argued for leniency and Mr. Harris addressed the court.  (ECF No. 44 at 12–18, 23–27).  The court varied from the guidelines range and sentenced him to a term of 60 months on

Counts One and Three, followed by the mandatory term of 60 months on Count Two.  (ECF No. 44 at 32–33).  It specifically noted three times that the sentence was sufficient but not greater than necessary, and stated that any lesser sentence would be inappropriate.  (ECF No. 44 at 33, 34).  The court advised Mr. Harris that he had the right to appeal the sentence, that if he was unable to afford the cost of an appeal that he could apply for leave to appeal in forma pauperis, that any appeal must be filed within fourteen days, and that upon request the clerk would immediately file a notice of appeal in his behalf.  (ECF No. 44 at 38).

Judgment was entered in this case on September 9, 2013.  Therefore, to have been timely filed, Mr. Harris would have had to file a notice of appeal on or before September 23, 2013.  Neither Mr. Harris nor the Government filed a timely notice of appeal of the court's below guidelines sentence.  On December 26, 2013, two months after sentencing, the clerk received two letters from Mr. Harris.  One requested that he be allowed to purchase copies of his indictment and in the other he requested the transcripts from rearraignment and sentencing.  (ECF No. 37).  Mr. Harris mentioned neither the reason for his requests, nor an appeal.  The clerk mailed him a response the same day.  (ECF No. 38).

On January 24, 2014, the clerk received a letter from Mr. Harris captioned "Status Inquiry on Direct Appeal," to which the clerk responded that no notice of appeal had been filed in Mr. Harris' case.  (ECF Nos. 39, 40).  The next docket entry is a letter from the Eleventh Circuit Court of Appeals, appended to which is a handwritten "Notice of Appeal" dated January 13, 2014, which includes a request to proceed in forma pauperis. (ECF No. 41).[1]  The Eleventh Circuit clerk indicated that by this letter, the Notice of Appeal was being forwarded to the district court to be filed as of the date it was received in the Eleventh Circuit, February 3, 2014.  (ECF No. 41).  The district court denied Mr. Harris' motion to proceed in forma pauperis without prejudice without commenting on the timeliness of his request, and on March 10 it granted his renewed request to proceed in forma pauperis on appeal and appointed the Office of the Federal Public Defender to represent him.  (ECF Nos. 45, 49, 50).

Mr. Harris then submitted a letter to the court titled "Motion for re-Retained Attorney Fees," through which he sought to recover from former counsel all moneys paid for his representation.  (ECF No. 51).  The Court

---

[1]  Documents 41 and 42 are identical entries.

Case No: 4:13cr16/MW/CAS; 4:15cv255/MW/CAS

denied the motion, and Mr. Harris unsuccessfully appealed this order. (ECF Nos. 52, 55, 69).

On July 14, 2014, the Eleventh Circuit granted the Government's motion to dismiss Mr. Harris' direct appeal as untimely.  (ECF No. 62).  It later denied a motion for reconsideration of this order.  (ECF No. 63).

Mr. Harris filed a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), which the district court denied.  (ECF Nos. 64, 67).

Mr. Harris filed his initial motion to vacate on May 7, 2015, pursuant to the prison mailbox rule.[2]  He raised a single claim, that counsel was constitutionally ineffective because he did not file a timely notice of appeal. Because the claim was bereft of factual support, pursuant to court order, he filed an amended motion.  (ECF Nos. 72, 73).  In his amended motion, Mr. Harris separates his claims into three grounds for relief.  First, he asserts

---

[2]A pro se inmate's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing. *See* Houston v. Lack, 487 U.S. 266 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule"); Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing); Jeffries v. United States, 748 F.3d 1310, 1314 (11th Cir. 2014) (absent evidence to the contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was signed).

that trial counsel was ineffective for failing to file a timely appeal. Next he maintains that counsel was constitutionally ineffective because he failed to object to the court's application of the four-level enhancement pursuant to § 2K2.1(b)(6)(B).  Third, he claims that the office of the Federal Public Defender was constitutionally ineffective because neither the transcript request nor the appellate brief were filed in a timely manner, resulting in the dismissal of his appeal.  Following the receipt of

Mr. Harris' reply the court scheduled an evidentiary hearing in this case.

At the hearing, Mr. Harris called his former attorney, Mr. Akbar, as his first witness.  (*See* ECF No. 86 at 5–15).  Mr. Akbar testified that he had been a public defender in West Palm Beach, Florida, for three and a half years before he moved back to Tallahassee and opened his own practice. Counsel was a solo practitioner in September of 2013 when he represented Mr. Harris, and this case was the first federal case that counsel had handled alone, although he had co-counseled other cases.  At the time, he had perfected no appeals involving guilty pleas, but he testified that the general practice during his time with the office of the public defender was to have his paralegal prepare and file a notice of appeal after every trial to preserve any errors that might have occurred at trial.

Case No: 4:13cr16/MW/CAS; 4:15cv255/MW/CAS

Counsel was asked what his discussion was with Mr. Harris regarding whether to appeal or not, and he responded that the "only discussion we had was at the table immediately after the sentencing and I asked Mr. Harris, I said, well, do you want to appeal."  (ECF No. 86 at 11). Counsel stated that his client told him that he did not see any reason for an appeal, and asked counsel's opinion.  Counsel said that he did not see any reason for an appeal because the court had given Mr. Harris a variance on the sentence.  Counsel testified that if Mr. Harris had said that he wanted an appeal, he immediately would have requested that the clerk enter the notice of appeal and asked that the court appoint the Federal Public Defender's office to represent Mr. Harris because Mr. Akbar does not do appeals.  Counsel admitted that he did not do anything to document his client's decision not to appeal.

Mr. Akbar testified that he first learned that this former client wanted to appeal when Mr. Harris filed his 2255 motion, although when asked for clarification counsel indicated that he was aware of Mr. Harris filing the status inquiry with respect to the appeal, via the court's electronic notification system.  At that time, counsel explained that he did not take any action because he knew that Mr. Harris had said he did not want to appeal

and Mr. Akbar's representation of him had concluded.  Mr. Akbar indicated that he received phone calls from Mr. Harris and his family after sentencing, but that nothing was mentioned about an appeal.  Counsel also noted that Mr. Harris had not paid his full retainer fee, but that because the relationship was not merely a professional relationship, their conversations about this issue were informal and never reduced to writing.

On cross-examination, Mr. Akbar denied that there had been any animosity between the two men or any communication issues until after sentencing when he started hearing secondhand about Mr. Harris making allegations about the representation.  Even then, counsel indicated, he never heard that his former client complained that Mr. Akbar had asked him to file an appeal and he did not.  When asked whether Mr. Harris had advised counsel to file a direct appeal on his behalf, Mr. Akbar stated unequivocally, "He never did so."  (ECF No. 86 at 19).  Counsel again admitted that the only conversation they had about an appeal was at sentencing and noted that Mr. Harris was satisfied with the sentence which was within the range counsel had predicted.  Mr. Akbar told Mr. Harris that he would try to get out to see him before he went to prison, but there was no discussion about an appeal.

Case No: 4:13cr16/MW/CAS; 4:15cv255/MW/CAS

Counsel reiterated that it was not until January of 2014 when

Mr. Harris sent the letter to the clerk requesting the status of his appeal that

he learned of Harris' interest in an appeal.  Mr. Akbar noted that all of the

phone calls to his staff after sentencing involved Mr. Harris' property.

Mr. Akbar did not recall any conversation with Harris about an appeal or

about any dissatisfaction with his sentence, and he reiterated that if he had

been told to file an appeal he merely would have phoned the clerk to have

the notice filed and then filed a motion to withdraw. (ECF No. 86 at 15–22).

The court inquired three times whether counsel would have given Mr.

Harris any advice with respect to perfecting the appeal, and Mr. Akbar said

that he "just would have followed through [with the appeal], if that's what he

wanted."  (ECF No. 86 at 23–24).

At the end of his testimony, counsel stated that he went through his

office records and did not find any indication of any kind of communication

about an appeal.  (ECF No. 86 at 25–27),

Defendant J-Shun Harris testified as the next witness.  (*See* ECF No.

86 at 28–67).  Mr. Harris explained how Mr. Akbar came to represent him

and their payment arrangements.  He stated that when he requested the

transcripts from the court it was just for his personal use to see if he could

identify any error in his case.  Mr. Harris also stated that he had no additional communication with Mr. Akbar after his December letters to the court. The undersigned asked Mr. Harris to explain his requests that counsel appeal.  Mr. Harris insisted that he asked counsel to appeal and said that no more than seven days after sentencing he called Mr. Akbar's office collect and told the person who answered the phone that he was calling about "Mr. Akbar coming to see me pertaining to my appeal, and he said he would come out and discuss strategy."  The court reminded Mr. Harris that he was under oath, and Mr. Harris persisted in stating that he had mentioned the word "appeal" in his call to counsel.

Mr. Harris admitted that he did not contact the court until January 21, 2014, to inquire about his appeal, and stated that the reason he waited was that he assumed that Mr. Akbar was taking the proper steps to appeal his case.  Mr. Harris explained that although he had prior convictions, he had never served state prison time nor had he previously appealed a criminal conviction.  He said that his basis for appeal was that he had been "charged twice for the same wrong" in that he had been convicted both of possession of a firearm in furtherance of a drug trafficking crime and possession of a firearm by a convicted felon.  (ECF No. 86 at 37, 56).

Mr. Harris further explained that after he arrived at Coleman, he did some research and discovered that the application of the § 2K2.1(b)(6)(B) enhancement was improper double counting.  (ECF No. 86 at 40).

Mr. Harris' testimony with respect to the actions he took regarding his appeal was contradictory and taken as a whole was not credible.  He first asserted that he spoke to Mr. Akbar on September 23, 2013, which was 17 days from the date of his sentencing, and that counsel told him that it was "too late" to pursue an appeal. (ECF No. 86 at  41, 42).  He then stated that he did not call counsel between September 2013 and November of 2013 because he thought that counsel was "going through the process, [which] takes time." Finally, he testified that counsel told him in November of 2013 that it was too late to appeal.  (ECF No. 86 at 46–47, 49, 53).  Mr. Harris knew that no appeal had been filed but stated that he did not write the letter to the court until January of 2014, because he did not know the proper procedure.  Upon further inquiry he claimed that the reason he wrote the letter in January of 2014 was to "start the process of . . . trying to get an appeal," and that he did this upon the advice of a jailhouse lawyer.  (ECF No. 86 at 42, 47–48, 50).  Mr. Harris admitted that until he filed his § 2255

motion, he had never alleged that he had specifically told Mr. Akbar to file an appeal and he did not.  (ECF No. 86 at  62).

The last witness was Al-Assan Noah, a legal assistant for Mr. Akbar. (ECF  No. 86 at 69–74).  Mr. Noah indicated that he had spoken to Mr. Harris several times after sentencing but that Mr. Harris never inquired about his appeal.  He further stated that had a message about an appeal been given to another employee, they would have relayed it to him.

At the conclusion of the testimony, defense counsel argued that in light of the imperfect record lacking in written documentation it was impossible to know what happened, and that the court should err on the side of letting Mr. Harris file an appeal.

The Government argued that Mr. Harris' testimony regarding the appeal was not credible, and that his allegation regarding his request that counsel file an appeal was a red herring of sorts to try to get the guidelines adjustment issue addressed.  It also argued that the corrected guidelines range, after taking away the four level adjustment would still encompass the sentence Mr. Harris received, which the court found to be an appropriate sentence.  The Government also expressed the position that Mr. Harris' § 2255 motion was not timely, because it was not filed within

one year from the time Mr. Harris knew that no appeal had been filed, although it was filed within one year of the Eleventh Circuit's opinion dismissing what it determined to be a belated appeal.  Finally, the Government stated that even if the court decided every issue in Mr. Harris' favor, there was no prejudice because, based on the court's comments at sentencing, Mr. Harris would have received the same sentence regardless if the guidelines range were lower.

The undersigned directed the parties to file supplemental briefs addressing the timeliness of the motion, whether Mr. Harris requested that counsel file an appeal, whether the issue of consultation regarding Mr. Harris' appellate rights was properly before the court, and the issue of prejudice.  (ECF No. 86 at 89-91).

Mr. Harris argued in his supplemental brief that the record reflects diligent, albeit ineffective, attempts to secure judicial review of the improperly calculated sentencing guidelines range.  (ECF No. 89).  He concedes that it is not clear, even after the evidentiary hearing, whether he instructed counsel to appeal because his testimony reflects that he did not truly understand what filing a notice of appeal and the process of appealing his criminal conviction meant.  Mr. Harris argues that the only thing that is

clear is that there was no meaningful consultation as to what it means to appeal one's conviction, and that this omission was a violation of the principles announced in <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000). He urges that in light of the parties' agreement that there was a non-frivolous ground for appeal, i.e, whether the sentencing guidelines range was correctly calculated, he should be allowed to present this unreserved argument to the appellate court. Mr. Harris finally maintains that it is improper to assume that the sentencing judge would have imposed the same sentence if presented with the correct sentencing guidelines range, rather than imposing a variance from this range.

In its response, the Government states that "without conceding counsel was ineffective, [it] recommends that Mr. Harris be allowed to file an out-of-time appeal of his sentence." (ECF No. 90 at 1). It concedes the timeliness of the § 2255 motion for purposes of this case only, but points to myriad inconsistencies in the record that weigh against Mr. Harriss assertion that he instructed counsel to file an appeal. It suggests that the guidelines error Mr. Harris now seeks to raise was only realized after he had discussions with other inmates about his case once he reached his designated institution and well after the fourteen days had expired, and that

the "fiction" about his request that counsel file an appeal is merely an attempt to seek redress of this issue.

With respect to the duty to consult, the Government takes the position that counsel adequately consulted with Mr. Harris under the circumstances known at the time of sentencing.  It noted that counsel met with Mr. Harris before sentencing to discuss the sentence, which counsel expected to be between 7 and 12 years, despite the fact that Mr. Harris' guidelines range of 87 to 108 months followed by a mandatory 60 month term, would have been approximately 12 to 14 years imprisonment.  (ECF No. 86 at 19–20).   The Government relies heavily on the district court's statement that "any sentence less than ten years . . . would be inappropriate," and concludes that under these circumstances the limited discussion concerning filing an appeal between Mr. Akbar and Mr. Harris was reasonable and sufficient.

The Government admits that there could "arguably . . . be some ambiguity over whether the consultation was sufficient given the actual existence of a non-frivolous ground to appeal."  (ECF No. 90 at 7).  The Government notes that no one caught the error in the PSR, absent which Harris' total offense level would have been 23 and the guideline range 57

to 71 months instead of 87 to 108 months.  As such, the Government

states that it has reevaluated its position and agrees that Mr. Harris should

be given the opportunity to file a direct appeal.  The Government takes its

position "without conceding Mr. Akbar acted ineffectively or that

Defendant will succeed on appeal."  However, absent a finding that counsel

was constitutionally ineffective, there is no jurisdictional basis for affording

Mr. Harris a direct appeal at this juncture.

## LEGAL ANALYSIS

Collateral review is not a substitute for direct appeal, and therefore

the grounds for collateral attack on final judgments pursuant to § 2255 are

extremely limited.  A prisoner is entitled to relief under section 2255 if the

court imposed a sentence that (1) violated the Constitution or laws of the

United States, (2) exceeded its jurisdiction, (3) exceeded the maximum

authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28

U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th

Cir. 2011).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions

of constitutional rights and for that narrow compass of other injury that

could not have been raised in direct appeal and would, if condoned, result

in a complete miscarriage of justice.'"  Lynn v. United States, 365 F.3d

1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental

miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S.

478, 496 (1986), provides that it must be shown that the alleged

constitutional violation "has probably resulted in the conviction of one who

is actually innocent . . . ."

    A motion to vacate under section 2255 is not a substitute for direct

appeal, and issues which could have been raised on direct appeal are

generally not actionable in a section 2255 motion and will be considered

procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States,

523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195

(11th Cir. 2011).  An issue is "'available' on direct appeal when its merits

can be reviewed without further factual development."  Lynn, 365 F.3d at

1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the

ground of error was unavailable on direct appeal, a court may not consider

the ground in a section 2255 motion unless the a defendant establishes (1)

cause for not raising the ground on direct appeal, and (2) actual prejudice

resulting from the alleged error, that is, alternatively, that he is "actually

innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations

omitted).  To show cause for procedural default, a defendant must show

that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694 F.3d 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  Strickland's two part test also applies to guilty pleas. Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either

Case 4:13-cr-00016-MW-CAS   Document 91   Filed 04/07/16   Page 20 of 28

Page 20 of 28

of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720

F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248

(11th Cir.2000) ("[T]he court need not address the performance prong if the

defendant cannot meet the prejudice prong, or vice versa.").  In

determining whether counsel's conduct was deficient, this court must, with

much deference, consider "whether counsel's assistance was reasonable

considering all the circumstances." Strickland, 466 U.S. at 688; *see also*

Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).

If a defendant specifically instructs his attorney to file a notice of

appeal, a lawyer who disregards this instruction acts in a manner that is

professionally unreasonable.  Roe v. Flores-Ortega, 528 U.S. 470, 477

(2000) (citing Rodriguez v. United States, 395 U.S. 327 (1969); Peguero v.

United States, 526 U.S. 23, 28 (1999)).  Since a defendant whose lawyer

fails to file an appeal upon request has been denied an entire judicial

proceeding, prejudice is presumed and the defendant is entitled to a

belated appeal.  *Id.*; Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th

Cir. 2005).  However, in cases where a defendant neither instructs counsel

to file an appeal nor asks that an appeal not be taken, the court must

consider whether counsel has consulted with his client about an appeal.

"Consultation" conveys a specific meaning - advising the defendant about the advantages and disadvantages of pursuing an appeal and making a reasonable effort to discover the defendant's  wishes.  <u>Flores-Ortega,</u> 528 U.S. at 478.  If counsel has not consulted with the defendant, the court must consider whether counsel's failure to consult with the defendant itself constitutes deficient performance.  *Id.*  The <u>Flores-Ortega </u>Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal:

> We instead hold that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known . . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.

*Id.,* 528 U.S. at 480; *see also* <u>Devine v. United States</u>, 520 F.3d 1286 (11th Cir. 2008) (finding counsel had no affirmative duty to consult with defendant about an appeal where defendant was sentenced at the bottom

of the Sentencing Guidelines range after pleading guilty and waiving right

to appeal); Thompson, 504 F.3d at 1208 (11th Cir. 2007) (defendant

dissatisfied with perceived disparate sentence met burden of showing he

would have wanted to appeal); Otero v. United States, 499 F.3d 1267 (11th

Cir. 2007) (defendant who received sentence at low end of predicted

guidelines range and had not expressed desire to appeal failed to show

prejudice).

      In cases where a defendant has not specifically instructed his

counsel to file a notice of appeal, a *per se* prejudice rule does not apply,

rather, a defendant must demonstrate a reasonable probability exists that,

but for counsel's deficient performance, he would have timely appealed.

Flores-Ortega, 528 U.S. at 484, 486; Thompson, 504 F.3d at 1207.

"Evidence that there were nonfrivolous grounds for appeal or that the

defendant in question promptly expressed a desire to appeal will often be

highly relevant in making this determination."  Flores-Ortega, 528 U.S. at

485.  However, "[b]ecause a direct appeal of a federal conviction is a

matter of right, *see* Rodriquez v. United States, 395 U.S. 327, 329-330

(1969), we determine whether a defendant has shown that there is a

reasonable probability that he would have appealed without regard to the

putative merits of such an appeal." Thompson, 504 F.3d at 1208 (citing

Flores-Ortega, 528 U.S. at 485-86; Gomez-Diaz, 433 F.3d at 793).

In Thompson, the district court had found  "[c]onsulting with

[Thompson] for less than five minutes about his right to appeal does not

equate to a failure to consult."  504 F.3d at 1207.  On appeal, the Eleventh

Circuit disagreed.  It stated that the question of what constitutes adequate

consultation is not one of duration, but of content.  *Id.*  It found that the

content of the exchange in that case did not constitute adequate

consultation because no information was provided to the defendant from

which he could have intelligently and knowingly either asserted or waived

his right to an appeal, and the record was clear that no reasonable effort

was made to discover defendant's informed wishes regarding an appeal.

*Id.*  Under these circumstances, the court found that any waiver by the

defendant of his right to appeal was not knowing and voluntary.  *Id.*

The court begins the inquiry in this case by finding that Mr. Harris'

testimony regarding his request that counsel file an appeal was not

credible.  While Mr. Harris' relative unfamiliarity with the federal criminal

process may have had an impact, his testimony was contradictory, and the

actions taken by him post-sentencing were inconsistent with those of

someone whose attorney had not filed a requested appeal.  Instead,

Mr. Harris' alleged request that counsel file an appeal appears to be, as the

Government suggests, an after-the-fact fiction, created in an attempt to

secure review of a perceived sentencing error that may or may not have

had an impact on the proceedings.[3]  The court credits the testimony of

Mr. Akbar and his assistant Mr. Noah, that Mr. Harris never requested that

counsel file an appeal, whether at sentencing or within the fourteen day

period following the proceeding.

The next question involves consultation.  One of the examples given

by the Flores-Ortega court of a situation where it would be "difficult to say"

that counsel was professionally unreasonable for not consulting with a

client is remarkably similar to the case at bar. The Court posits: "suppose

that a defendant consults with counsel; counsel advises the defendant that

a guilty plea probably will lead to a 2 year sentence; the defendant

expresses satisfaction and pleads guilty; the court sentences the defendant

---

[3] While the district court specifically commented upon the propriety of Mr. Harris' ten year sentence, the sentence was based upon the record and guidelines calculations before it at the time.  It is impossible for this court to divine whether, had  Mr. Harris scored lower on the guidelines, the sentencing court would have made a different determination of the proper sentence.

Case No: 4:13cr16/MW/CAS; 4:15cv255/MW/CAS

to 2 years' imprisonment as expected and informs the defendant of his

appeal rights; the defendant does not express any interest in appealing,

and counsel concludes that there are no nonfrivolous grounds for appeal."

Flores-Ortega, 528 U.S. at 479.

In this case, Mr. Harris' sentence fell within the range of the below-

guidelines estimate purportedly given by counsel.[4]  Nonetheless, the court

is not persuaded that, under the circumstances of this case, the

consultation was adequate under federal constitutional standards.  The

record is clear that no information was provided to the Mr. Harris from

which he could have intelligently and knowingly either asserted or waived

his right to an appeal.  *See* Thompson, 504 F.3d at 1207.  Although the

issue Mr. Harris now claims that he wanted to raise was not preserved for

appellate review, this was not a complete bar; it could still be reviewed

under the plain error analysis.  United States v. Madden, 221 F. App'x 915,

918, (11th Cir. 2007) (citing United States v. Clark, 274 F. 3d 1325, 1326

(11th Cir. 2001)).  In any event, whether there were non-frivolous grounds

for an appeal, or whether an appeal would have been in Mr. Harris' best

---

[4]  Counsel was not asked to explain the basis for his below guidelines prediction at the evidentiary hearing.

interests are not questions for this court to consider.  Mr. Harris had a right

to an adequate consultation with counsel such that he could make an

educated decision concerning the exercise of his appellate rights.  No such

consultation took place in this case.

Conclusion

After consideration of the entire record, the court finds that counsel

was constitutionally ineffective because he did not adequately consult with

Mr. Harris regarding his desire to appeal, and Mr. Harris is entitled to relief

on this ground.

The Eleventh Circuit has stated that the proper procedure when an

out of time appeal is warranted is:  (1) the criminal judgment from which the

out-of-time appeal is to be permitted should be vacated; (2) the same

sentence should then be reimposed; (3) upon reimposition of that

sentence, the defendant should be advised of all the rights associated with

an appeal from any criminal sentence; and (4) the defendant should also

be advised that the time for filing a notice of appeal from that re-imposed

sentence is fourteen days, which is dictated by Federal Rule of Appellate

Procedure 4(b)(1)(A)(i).  United States v. Parrish, 427 F.3d 1345, 1347

(11th Cir. 2005) (quoting United States v. Phillips, 225 F.3d 1198, 1201

(11th Cir. 2000)); <u>United States v. Palacios</u>, 516 F. App'x 734 (11th Cir. 2013).  The same procedure arguably applies here, where there was inadequate consultation regarding Mr. Harris' appellate rights, and thus there exists the potential that Mr. Harris will choose to pursue an out of time appeal.

Mr. Harris' remaining claims should be dismissed without prejudice to their reassertion, if appropriate, upon conclusion of his direct appeal.  *See* <u>McIver v. United States</u>, 307 F.3d 1327, 1331, n.2 (11th Cir. 2002).  An order granting a § 2255 petition, and reimposing sentence, will reset to zero the counter of collateral attacks pursued and will not render subsequent collateral proceedings "second or successive."  <u>McIver</u>, 307 F.3d at 1332 (quoting <u>Shepeck v. United States</u>, 150 F.3d 800, 801 (7th Cir. 1998)).

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The amended motion to vacate, set aside, or correct sentence (ECF No. 73) be **GRANTED** with respect to the portion of Ground One of Mr. Harris' claim that counsel was constitutionally ineffective for his failure to consult with him regarding an appeal, and that the remaining claims be **DISMISSED without prejudice**.

Case No: 4:13cr16/MW/CAS; 4:15cv255/MW/CAS

2.  Mr. Harris' criminal judgment be vacated and the same sentence reimposed.

3.  Counsel be appointed for the purpose of appeal (or at a minimum to consult with Mr. Harris with respect to the advantages and disadvantages of pursuing an appeal).

At Tallahassee, Florida, this 7th day of April, 2016.


/s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.